IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| STEVEN F. HOTZE, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | |
| v. | ) | |
| | ) | No. 4:24-cv-05141 |
| KIM OGG, in her official capacity as District | ) | |
| Attorney of Harris County, WARREN DIEPRAAM, | ) | |
| in his official capacity as Assistant District Attorney | ) | **JURY TRIAL** |
| of Harris County, John Does 1-5 in their official | ) | **DEMANDED** |
| capacity as employees of the District Attorney of | ) | |
| Harris County, John Does 6-10 who worked in | ) | |
| concert with these Harris County employees of the | ) | |
| District Attorney's Office, and the District Attorney's | ) | |
| Office of Harris County, Texas, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Steven F. Hotze, M.D. ("Plaintiff" or "Dr. Hotze ") hereby seeks declaratory, injunctive, and compensatory relief against Defendants Kim Ogg, in her official capacity as District Attorney of Harris County ("DA Ogg"), the District Attorney's Office Harris County, TX ("DA's Office"), Warren Diepraam, in his official capacity as Assistant District Attorney of Harris County ("ADA Diepraam") and John Does 1-10 to be identified through discovery in this action (collectively, "Defendants"), for their deprivation of Plaintiff's rights under the First, Fifth and Fourteenth Amendments to the United States Constitution, as follows:

## <u>NATURE OF THE ACTION</u>

1.      Defendants are perpetrating an unprecedented retaliation against Dr. Hotze for the exercise of his First Amendment rights after the 2020 election in Harris County.

For several years Defendants, working together, and in some cases with private attorneys, perpetrated frivolous criminal and civil lawsuits against Dr. Hotze, which have cost Dr. Hotze enormous amounts of time and money to defend. These lawsuits concerned election integrity advocacy and actions by Dr. Hotze which are fully protected under the First Amendment of the U.S. Constitution.

2.      In deprivation of Dr. Hotze's Fifth Amendment rights under the U.S. Constitution, Defendants concocted a scheme to conspire and collaborate with a private legal team to initiate a civil lawsuit. Defendants did not inform Dr. Hotze of their involvement, and the private legal team would funnel the civil discovery to Defendants. Defendants then used the civil discovery to initiate a criminal proceeding, while concealing the scheme from Dr. Hotze. Defendants' concealment of their scheme would deceive Dr. Hotze to forgo his constitutional right to remain silent for the criminal case. And this is indeed what has occurred.

3.      In deprivation of Dr. Hotze's rights to equal protection under the Fourteenth Amendment, Defendants retaliated, harassed, and injured Dr. Hotze in an unprecedented manner contrary to how everyone else, and particularly those who are not outspoken conservatives like Dr. Hotze, have been treated by Defendants.

## JURISDICTION

4.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

5.      Plaintiff's claims are brought under 42 U.S.C. § 1983 for violations of the First, Fifth and Fourteenth Amendments to the U.S. Constitution.

6.     An award of costs and attorneys' fees is sought pursuant to 42 U.S.C. § 1988.

**VENUE**

7.     Venue is proper in this United States District Court for the Southern District of Texas under 28 U.S.C. § 1391(b)(1) and (b)(2) because at least one of the Defendants resides in this district and a substantial part of the events were committed in this district.

**THE PARTIES**

8.     Dr. Hotze is a resident and registered voter of Harris County, Texas, and a citizen of the United States.

9.     DA Ogg is the Harris County District Attorney and a resident of Harris County, Texas. DA Ogg was not reelected, and her term officially ended on December 31, 2024.

10.     The DA's Office is the District Attorney's Office which is located in Harris County, Texas.

11.     ADA Diepraam is a contract attorney who was hired by DA Ogg to assist with the DA's Office criminal prosecution of Dr. Hotze. ADA Diepraam was handpicked due to his democratic political beliefs and public dislike of Dr. Hotze.

12.     John Does 1-5 are individual employees, who identities will be determined in discovery in this action, who acted in concert with others while employees of the District Attorney's Office to deprive Dr. Hotze of his constitutional rights.

13.     John Does 6-10 are individuals who were not employees of the District Attorneys' Office but acted in concert with that office to deprive Dr. Hotze of his

constitutional rights, either by participating or providing funding to the civil lawsuit against Dr. Hotze. Their identities will be determined in discovery in this action.

## **FACTUAL BACKGROUND**

15.     Since the 1990's, Dr. Hotze as a high-profile Republican and DA Ogg as a high-profile Democrat have publicly opposed each other on numerous issues ranging from politics to crime to religion.

16.     Dr. Hotze has been outspoken against election fraud since prior to the 2020 election, and has been involved in an organization devoted to exposing election fraud in Harris County.  In the exercise of his First Amendment rights, Dr. Hotze has also raised money and campaigned against Democrats in Harris County elections, particularly those who he believed had failed to do enough to safeguard election integrity and conservative values.

17.     Dr. Hotze has opposed DA Ogg in each of her elections.  DA Ogg has been an outspoken critic of Dr. Hotze for many years.

18.     Working through his 501(c)(3) organization, Liberty Center for God & Country ("Liberty Center"), Dr. Hotze exposed individuals who had participated in ballot harvesting and other illegal voting activities.

19.     The individual(s) were compensated by DA Ogg's campaign.

20.     The information related to vote fraud was provided to DA Ogg.  However, DA Ogg did not act on the evidence of vote fraud provided to her by Liberty Center. Instead, and in retaliation, DA Ogg targeted Dr. Hotze for exposing vote fraud, resulting in multiple indictments and arrests.

21.     On October 19, 2020, former Houston Police Department (HPD) Captain, Mark Aguirre ("Mr. Aguirre"), was involved in a fender-bender automobile accident with David Lopez ("Mr. Lopez").  Dr. Hotze was not involved in this accident.

22.     After the accident occurred, Mr. Lopez was upset and charged at Mr. Aguirre.  Mr. Aguirre, not Mr. Lopez, flagged down an HPD officer who was driving by and reported the incident to the officer.  After investigating the automobile accident, the officer issued Mr. Aguirre a traffic ticket for failing to control his speed.  Neither party was arrested at the time.

23.     At the time of the incident, Mr. Aguirre was working as an independent contractor for Liberty Center.  Mr. Aguirre was investigating allegations of vote fraud.  Dr. Hotze was an officer of Liberty Center, and did not direct nor control the accident, or own any of the automobiles involved in the accident.

24.     As part of the ballot harvesting investigation, Dr. Hotze uncovered that one of the ballot harvesters was paid as a consultant by DA Ogg.

25.     On or about November 11, 2020, Mr. Aguirre appeared before Houston Municipal Court Judge Kimberly Gamble and entered a plea of "no contest."  Mr. Aguirre was found guilty and sentenced to pay a fine of $174.90 and court costs totaling $308.90.

26.     On March 30, 2021, Mr. Lopez sued Dr. Hotze, <u>not Mr. Aguirre</u>, for personal injury, alleging, among other things, false imprisonment, assault, civil conspiracy, civil theft, aiding and abetting, and intentional infliction of emotional distress based on the alleged torts of Mr. Aguirre, an independent contractor ("Civil Suit").

27.     At the time the Civil Suit was filed, Mr. Aguirre was not included as a party to the Civil Suit and Mr. Aguirre and Dr. Hotze had not been indicted by the DA's Office.

Indeed, Dr. Hotze, not Mr. Aguirre, the individual involved in the automobile accident, was sued in civil court by Mr. Lopez for personal injury.

28.     Notably, Mr. Lopez is represented by K. Scott Brazil ("Mr. Brazil") in the Civil Suit.  Mr. Brazil and his partner also represent the Texas Democratic Party.  DA Ogg, the DA's Office and the Civil Suit private attorneys acted in concert and conspired against Dr. Hotze.

29.     In May of 2021, after Mr. Lopez filed the Civil Suit against Dr. Hotze, and before Mr. Aguirre or Dr. Hotze were indicted, Mr. Brazil began engaging in civil discovery, specifically requesting information which prosecutors would not be entitled to in a criminal proceeding without a court order, including but not limited to, the deposition of Dr. Hotze, request for production of documents, interrogatories, request for admissions, and information related to Dr. Hotze's net worth.

30.     Dr. Hotze never received a target letter[1] identifying him as the subject of an investigation by the DA's Office.

31.     On December 14, 2021, more than a year after the automobile accident between Mr. Aguirre and Mr. Lopez, and nine months after Dr. Hotze had been sued in the Civil Suit for the automobile accident involving Mr. Aguirre and Mr. Lopez, Mr. Aguirre, not Dr. Hotze, was indicted for Unlawful Restraint and Aggravated Assault with a Deadly Weapon.  At the time, the Civil Suit was proceeding, and extensive discovery had been conducted.

---

[1] A target letter informs a person that he/she is the "target" of a criminal probe.  The letter alerts them that an indictment may be forthcoming and gives the target a chance to obtain legal representation to prepare for what lies ahead.

32.     During this period, *i.e.*, after the Civil Suit was initiated and before Dr. Hotze was indicted, Mr. Brazil and Dicky Grigg (Mr. Grigg has also represented the Texas Democratic Party), the Civil Suit private attorneys, were coordinating and/or sharing information with the DA's Office, including the deposition testimony of Dr. Hotze, pleadings, discovery, and engaging in phone calls related to the strategy of the Civil Suit.

33.     On April 20, 2022, over a year after the Civil Suit had been filed and significant discovery in the Civil Suit had occurred, a grand jury indicted Dr. Hotze for Unlawful Restraint and Aggravated Assault with a Deadly Weapon (First Indictment"). The allegations in the Civil Suit mirror those in the First Indictment, without any evidence that Dr. Hotze directed, controlled, or was present at the minor traffic accident.

34.     On May 23, 2022, Mr. Aguirre was added as a party to the Civil Suit, more than a year and a half after Mr. Aguirre had been indicted and a month after the First Indictment.

35.     During this time, the DA's Office, under the control of DA Ogg, was secretly coordinating with the Civil Suit private attorneys and using the private attorneys as its agent to circumvent Dr. Hotze's Fifth and Fourteenth Amendment rights through the use of civil discovery in the criminal case against Dr. Hotze.

36.     Unbeknownst to Dr. Hotze, the DA's Office was conspiring with Mr. Brazil and Dicky Grigg to use the Civil Suit as a vehicle to gather information and investigate, in order to obtain the First Indictment.

37.     The DA's office benefitted from Dr. Hotze not asserting his Fifth Amendment rights in the Civil Suit, because Dr. Hotze was not informed and was unaware that he was the target of a criminal investigation.

38.     Because he had not been indicted, Dr. Hotze participated in the Civil Suit discovery process and did not request a stay of the Civil Suit or assert his Fifth Amendment rights.  However, asserting his Fifth Amendment rights in the Civil Suit would have resulted in a "adverse inference" in favor of Mr. Lopez.

39.     Notably, the First Indictment occurred a few days after Dr. Hotze held an election integrity gala with over 500 participants featuring prominent conservative leaders from across the country, including Texas Attorney General Ken Paxton and Mike Lindell.

40.     Even though Dr. Hotze was not at the scene of the automobile accident and had no connection with it other than his role as an officer of Liberty Center for which Mr. Aguirre worked as an independent contractor, the First Indictment charged Dr. Hotze with Unlawful Restraint and Aggravated Assault with a Deadly Weapon. This is the same charge that DA Ogg and the DA's Office made against Mr. Aguirre.

41.     On February 15, 2023, the court in the Civil Suit issued a Stay Order which stated: "Until further order of the Court, this case is hereby STAYED in its entirety."

42.     On May 31, 2024, the court in the Civil Suit *sua sponte* issued an order lifting the stay on October 14, 2024, and reset the case for trial during "the two-week period beginning December 2, 2024," concluding "that the discovery deadline in this case has passed and will remain closed …."

43.     On July 11, 2024, Dr. Hotze filed a Motion to Dismiss for Prosecutorial Misconduct ("Misconduct Motion") in the First Indictment.  The Misconduct Motion argued that the DA's Office conspired with Civil Suit private attorneys to violate Dr. Hotze's Fifth Amendment and other rights.

44.     On August 19, 2024, almost four (4) years after the automobile accident, which formed the basis of the Civil Suit, and approximately one month after filing the Misconduct Motion, DA Ogg, ADA Diepraam, and the DA's Office issued a second indictment, premised on the same facts as the First Indictment against Dr. Hotze. The second indictment included charges for engaging in Organized Criminal Activity and Aggravated Robbery with a Deadly Weapon ("Second Indictment").

45.     The Second Indictment occurred over two years after the First Indictment and after DA Ogg had assigned four different assistant district attorneys to the criminal case.

46.     On September 5, 2024, Dr. Hotze was summoned to appear in Harris County District Court for the Second Indictment. At this hearing, Dr. Hotze was arrested and jailed for 10 hours.

47.     On September 24, 2024, bond conditions were issued related to the Second Indictment, which required Dr. Hotze to have no contact with Mr. Lopez. The court ordered bond conditions which further prohibited Dr. Hotze from having any contact with the DA's Office's witnesses, and prevented Dr. Hotze from even trying the Civil Case without violating his court ordered bond conditions ("Bond Conditions").

48.     On October 5, 2024, the court denied Dr. Hotze's Second Amended Motion to Stay and/or Abate Proceeding.

49.     Dr. Hotze initiated this action on December 31, 2024 ("1983 Suit"). Within eighteen hours after receiving notice of this lawsuit, on New Year's Day (a government holiday), ADA Diepraam filed a "Notice of Intent to Seek Affirmative Findings of a Deadly Weapon and Hate Crime ("Notice of Hate Crime").

50.    The Notice of Hate Crime was not filed against Mr. Aguirre who was present at the scene of the October 19, 2020 car accident. Notably, Mr. Aguirre is also Hispanic.

51.    On January 17, 2025, the Supreme Court of Texas issued a Stay in the Civil Suit, which was set to go to trial on February 17, 2025.

### COUNT I
### Retaliation – First Amendment
### Pursuant to 42 U.S.C. § 1983

52.    Plaintiff incorporates herein all statements and allegations contained in this First Amended Complaint.

53.    Dr. Hotze has injuries to his First Amendment rights of freedom of speech, for which the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

54.    In publishing his conservative views on issues such as marriage, politics, election integrity, etc., and hosting a conservative talk radio show, as well as donating to conservative political campaigns which align with Plaintiff's values, Plaintiff was engaging and continues to engage in the constitutionally protected activities of free speech.

55.    Defendants are state actors. Their concerted conduct as alleged herein satisfies the "public function test," "state compulsion (or coercion) test," "joint action test," and/or "close nexus test."

56.    In taking the above-described actions, the Defendants intentionally, knowingly, willfully, wantonly, maliciously, and with reckless disregard retaliated against the Plaintiff for his constitutionally protected speech under the First Amendment, as incorporated and made applicable to the States by the Fourteenth Amendment, and

Defendants' ongoing retaliation has a chilling effect on Dr. Hotze's current and future speech.

57.     Specifically, Defendants retaliated against Plaintiff through the Civil Suit, the First and Second Indictment, and the Notice of Hate Crime which was designed to silence Plaintiff.

58.     Plaintiff's speech played a substantial part in the Defendants' decisions to collaborate with the Civil Suit attorneys and those who may be funding these attorneys, to initiate the Civil Suit and to use the Civil Suit as a pretext for acquiring discovery which would otherwise not be available without a court order in a criminal proceeding.

59.     Defendants' actions caused Plaintiff to suffer injuries that chill him from continuing to engage in constitutionally protected activity.

60.     Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known.

61.     Defendants' acts were done under color of state law.

62.     Defendants' actions as alleged herein have been taken in bad faith to harass and retaliate against Dr. Hotze.  Dr. Hotze has suffered specific and substantial injuries in fact to a legally protected interest; such injuries are a direct and proximate consequence of Defendants' violation of the First Amendment.

63.     As a direct and proximate consequence of the Defendants' violation of the First Amendment, Plaintiff has suffered and will continue to suffer damage to his professional life and future career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

## COUNT II
### Violation of the Fifth Amendment – Right to Remain Silent

**Pursuant to 42 U.S.C. § 1983**

64.     Plaintiff incorporates herein all statements and allegations contained in this First Amended Complaint.

65.     Defendants collaborated with the Civil Suit attorneys.

66.     Defendants brought the Civil Suit for the pretext purpose of acquiring information for criminal indictments.

67.     Defendants infringed on Dr. Hotze's rights by using the Civil Suit to bypass the protections guaranteed to Dr. Hotze by the Fifth Amendment of the U.S. Constitution.

68.     By concealing from Dr. Hotze that he was the target of a criminal investigation, Defendants compelled and/or deceived Dr. Hotze to undergo discovery in the civil matter when he could have asserted his Fifth Amendment rights.

69.     By pushing for a February 17, 2025 Civil Suit trial date, which is before a trial in the criminal case, Defendants have forced Dr. Hotze to either waive his Fifth Amendment right to remain silent or suffer adverse consequences and possibly an adverse judgment by invoking his Fifth Amendment right.

70.     Defendants have thereby placed an unconstitutional burden on Dr. Hotze's exercise of his Fifth Amendment rights.

71.     Defendants' actions were done under the color of state law.

72.     As a direct and proximate consequence of the Defendants' actions, Defendants have deprived Plaintiff of his Fifth Amendment rights, and Plaintiff has suffered and will continue to suffer damage to his professional life, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

## COUNT III
**Violations of the Fourteenth Amendment - Equal Protection**
**Pursuant to 42 U.S.C. § 1983**

73.     Plaintiff incorporates herein all statements and allegations contained in this First Amended Complaint.

74.     Plaintiff challenges Defendants' unprecedented and coordinated civil and criminal proceedings against him based on the Equal Protection Clause, as applied.

75.     Defendants insist on prosecuting their Civil Suit against Plaintiff rather than staying it pending completion of the criminal case, which is contrary to ordinary procedures of staying a civil case until after completion of a similar criminal case.

76.     Unlike other defendants in similar situations, Plaintiff never received a letter informing him that he was the target of a criminal investigation.  Defendants treated Plaintiff differently because of his conservative speech, positions, and values, in order to extract information for the First and Second Indictments.

77.     Plaintiff was thereby unable to assert his Fifth Amendment rights as a criminal suspect.

78.     DA Ogg indicted Plaintiff amid much publicity on multiple occasions.  DA Ogg has used this publicity to criticize Plaintiff and obtain publicity for herself.

79.     DA Ogg charged Plaintiff with conspiracy two years after asserting the underlying charge.  Contrary to ordinary custom, DA Ogg had Plaintiff arrested for the Second Indictment.

80.     DA Ogg treated Plaintiff differently because of Plaintiff's outspoken conservative statements.

81.     Defendants retaliated against Plaintiff because of his exercise of his First Amendment rights, in contrast with the lack of any similar action ever taken against anyone aligned with the Democratic Party.

82.     Defendants' actions were done under the color of state law.

83.     As a direct and proximate consequence of the Defendants' actions, Defendants have deprived Plaintiff of his Fourteenth Amendment rights, and Plaintiff has suffered and will continue to suffer damage to his professional life, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

84.     As a result of Defendants' actions, Defendants have deprived Plaintiff of his Equal Protection rights, and thereby have damaged and injured Plaintiff.

**COUNT IV**
**Prosecutorial Misconduct for Defendants' Violations of**
**Plaintiff's Fifth Amendment Rights**
**Pursuant to 42 U.S.C. § 1983**

85.     Plaintiff incorporates herein all statements and allegations contained in this First Amended Complaint.

86.     Defendants were involved in procuring the Civil Suit private attorneys and collaborated extensively with the private attorneys for the Civil Suit.  In doing so, Defendants masked their intentions to bring criminal charges against Plaintiff.

87.     In May of 2021, after Mr. Lopez filed the Civil Suit and prior to Plaintiff being indicted, the Civil Suit private attorneys began engaging in civil discovery, requesting information which prosecutors would not be entitled to in a criminal proceeding without a court order, including but not limited to, the deposition of Plaintiff, request for

production of documents, interrogatories, request for admissions, and information related to Plaintiff's net worth.

88.    Over a year after filing the Civil Suit, and almost six (6) months after Mr. Aguirre was indicted by Defendants, the First Indictment was rendered.

89.    Defendants never sent Plaintiff a target letter in the Civil Suit.  Defendants failed to advise Plaintiff that Defendants contemplated Plaintiff's criminal prosecution.

90.    Defendants used the Civil Suit private attorneys as their agents to circumvent Plaintiff's Fifth Amendment rights through the use of discovery in the Civil Suit.

91.    Because Plaintiff did not know he was the target of a criminal investigation, and because he had not been indicted, Plaintiff participated in the Civil Suit discovery process and did not request a stay of the Civil Suit or assert his Fifth Amendment rights.

92.    In 2024, Counsel for Dr. Hotze in the criminal case spent approximately six (6) months requesting that Defendants disclose communications with the Civil Suit private attorneys.  Specifically, counsel for Dr. Hotze filed motions to compel and numerous hearings were held regarding Defendants' refusal to turn over the responsive documents. Ultimately, the criminal trial court ordered the documents be produced.  To date, Defendants have failed to produce all of the responsive documents related to their communications with the Civil Suit private attorneys. Defendants' refusal to turn over these communications further delayed Plaintiffs ability to assert his constitutional rights.

93.    Defendants brought a civil action against Plaintiff solely to obtain evidence for its criminal prosecution.

94.     As a direct and proximate consequence of the Defendants' actions, Defendants have deprived Plaintiff of his Fifth Amendment rights, and Plaintiff has suffered and will continue to suffer damage to his professional life, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

### COUNT V
**Retaliatory Arrest – First and Fourteenth Amendment
Pursuant to 42 U.S.C. § 1983**

95.     Plaintiff incorporates herein all statements and allegations contained in this First Amended Complaint.

96.     The country enjoys a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open and that it may well include vehement caustic, and sometimes unpleasantly sharp attacks on government and public officials." *See New York Times Co., v. Sullivan*, 376 U.S. 254, 269-70 (1964).

97.     "[A]s a general matter the First Amendment prohibits government officials from objecting an individual to retaliatory actions" for engaging in protected speech. *See Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

98.     Motivated to punish and intimidate Plaintiff for his conservative voice and election integrity mission, Defendants engaged in multiple harmful acts against Plaintiff in violation of clearly established First Amendment law, which resulted in Plaintiff being arrested twice and jailed, charged with four felonies, denied the ability to rely upon his constitutional right to remain silent, sued civilly, and investigated for criminal charges which plainly lacked probable cause.

99.     Plaintiff was engaged in constitutionally protected activity when he publicly disparaged DA Ogg.

100.    Plaintiff was engaged in constitutionally protected activity when he began speaking about and investigating election integrity issues within Texas.

101.    Plaintiff was engaged in constitutionally protected activity when he contributed funding to conservative voices and platforms of which Plaintiff aligned.

102.    Defendants retaliatory motive caused Plaintiff's injuries.

103.    It is clearly established that retaliating against individuals by arresting them for their speech and under laws which are generally not used to arrest similarly situated individuals is a violation of the First Amendment.

104.    It is furthermore established that retaliating against individuals by engaging in the various harmful acts described *supra* is a violation of the First Amendment.

105.    The facts also demonstrate that the felony criminal charges in both the First and Second Indictment, were Indictments designed to silence and intimidate Plaintiff. Conspiring with private attorneys, one of which represents the Texas Democratic Party, initiating the Civil Suit, engaging in significant discovery, refusing to inform Plaintiff that he is under criminal investigation, using the discovery to file two Indictments which have bond conditions which further affect Plaintiff's ability to defend himself in the Civil Suit, arresting Plaintiff twice and jailing him, evidences retaliatory animus for which Defendants can offer no justification.

106.    No other similarly situated Democrat voices have ever been sued, charged and arrested as Plaintiff was.

107.    DA Ogg has never criminally charged someone for investigating vote fraud through a third-party contractor.  Plaintiff was only criminally prosecuted due to his political

views and the fact that Liberty Center was investigating vote fraud in an election where the Democrats in Harris County were successful.

108.    Defendants deprived Plaintiff of his rights to free speech and to remain silent under the First Amendment and Fifth Amendment as incorporated and made applicable to the states via the Fourteenth Amendment.

109.    The actions of Defendants, acting under the color of law cause Plaintiff significant physical and emotional harm.

110.    Defendants' unconstitutional acts, motivated by retaliatory animus, directly harmed Plaintiff by chilling his ability to exercise his First Amendment rights and by causing him damages.

111.    Had it not been for the retaliatory animus, Defendants would never have gone to the great lengths (as described *supra*) to silence Plaintiff.

112.    As a direct and proximate result of Defendants continuing violation of Plaintiff's rights, Plaintiff has in the past and will continue to suffer in the future, direct and consequential damages, including but not limited to, the loss of the ability to exercise his constitutional rights.

113.    Defendants acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights and is therefore subject to punitive damages.

**COUNT VI**
**Retaliation – Petition the Court**
**Pursuant to 42 U.S.C. § 1983**

114.    Plaintiff incorporates herein all statements and allegations contained in this First Amended Complaint.

115. Plaintiff engaged in constitutionally protected conduct when he filed the Misconduct Motion and the 1983 Suit.

116. Approximately a month after filing the Misconduct Motion, Defendants filed the Second Indictment. Based upon the timing of ADA Diepraam filing the Second Indictment and the continuing pattern of retaliation by Defendants, the Misconduct Motion was a substantial or motivating factor in ADA Diepraam filing the Second Indictment.

117. Within eighteen hours after filing the 1983 Suit, Defendants filed the Notice of Hate Crime. Based upon the timing of ADA Diepraam filing the Notice of Hate Crime and the continuing pattern of retaliation by Defendants, the 1983 Suit was a substantial or motivating factor in ADA Diepraam filing the Notice of Hate Crime.

118. In taking the above-described actions, the Defendants intentionally, knowingly, willfully, wantonly, maliciously, and with reckless disregard retaliated against the Plaintiff for his constitutionally protected speech and conduct under the First Amendment, as incorporated and made applicable to the States by the Fourteenth Amendment, and Defendants' ongoing retaliation has a chilling effect on Dr. Hotze's current and future speech.

119. Specifically, Defendants retaliated against Plaintiff through the Civil Suit, the First and Second Indictment, and the Notice of Hate Crime which was designed to silence Plaintiff.

120. Defendants' actions caused Plaintiff to suffer injuries that chill him from continuing to engage in constitutionally protected activity.

121. Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known.

122. Defendants' acts were done under color of state law.

123. Defendants' actions as alleged herein have been taken in bad faith to harass and retaliate against Dr. Hotze. Dr. Hotze has suffered specific and substantial injuries in fact to a legally protected interest; such injuries are a direct and proximate consequence of Defendants' violation of the First Amendment.

124. As a direct and proximate consequence of the Defendants' violation of the First Amendment, Plaintiff has suffered and will continue to suffer damage to his professional life and future career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

## PRAYER FOR RELIEF

125. Dr. Hotze seeks the following relief:

a. Award Plaintiff compensatory and punitive damages in amounts that are fair, just and reasonable, to be determined at trial;

b. Award Plaintiff reasonable attorneys' fees and costs; and

c. Grant such other and further relief as this Court may deem appropriate and equitable.

Respectfully submitted,

**WOODFILL LAW FIRM, PC**

 */s/ Jared Woodfill*
Jared R. Woodfill
State Bar No. 00788715
3 Riverway, Suite 750
Houston, Texas 77056
Tel: (713) 751-3080
Fax: (713) 751-3058
woodfillservice@gmail.com (service)

jwoodfill@woodfilllaw.com (non-service)

Dated:  February 3, 2025